**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-503-DJH**

**KELLY R. WHEELER,**                                                                                    **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                              **Defendant.**

## Report & Recommendation

Claimant Kelly R. Wheeler has filed suit challenging the Social Security Commissioner's denial of her request for disability insurance benefits ("DIB"). The District Judge has referred this matter to the undersigned Magistrate Judge for a report and recommendation. (DN 14.) For the reasons below, the undersigned recommends that the Commissioner's decision be AFFIRMED.

## I. Background

Wheeler filed an application for DIB on August 23, 2013. (DN 13-5, PageID # 212.) The claim was denied initially on December 19, 2013, and upon reconsideration on April 24, 2014. (DN 13-4, PageID # 157, 162.) On March 25, 2016, Administrative Law Judge Patrick B. Kimberlin III (the "ALJ") conducted a hearing on Wheeler's application. (DN 13-2 PageID # 98.) The ALJ then issued an unfavorable decision on May 4, 2016. (DN 13-2, PageID # 77.) In his written opinion, the ALJ made the following findings.

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since July 15, 2012, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: fibromyalgia, migraine headaches, and major depressive disorder (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. . . . [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that she can perform frequent but not constant handling, fingering, and feeling for both fine and gross manipulation; she cannot climb ladders, ropes, or scaffolds; she can occasionally perform all other postural activities; she should have no exposure to hazards, no work on uneven surfaces, and no outdoor work with exposure to sunlight. She can understand, remember, and carry out simple, routine job duties and instructions. She can engage in occasional work-related contact with coworkers and supervisors but should have no contact with the general public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on June 19,1984 and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether rod not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2012, through the date of this decision (20 C.F.R. 404.1520(g)).

(*Id.* at PageID # 82–91.) On May 15, 2017, the Appeals Council denied Wheeler's request for review. (*Id.* at PageID # 61.) The ALJ's decision is therefore the Commissioner's final decision. (*Id.*)

Wheeler initiated this action on August 17, 2017. (DN 1.) She filed her fact and law summary on February 9, 2018. (DN 15.) The Commissioner filed her fact and law summary on May 11, 2018. (DN 20.)

## II. Standard of Review

The Social Security Act, 42 U.S.C. § 401 *et seq.*, authorizes payments of DIB to certain persons with disabilities. 42 U.S.C. § 423(a). An individual is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

This Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Court finds the Commissioner's final decision is supported by substantial evidence, then the Court must "affirm the Commissioner's decision . . . even if substantial evidence would have supported the opposite conclusion." The Court "may not even inquire whether the record could support a decision the other way." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see also Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1994). Even if the Court would resolve the factual issues differently, if substantial evidence supports the Commissioner's decision, it must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

### III. Analysis

Wheeler argues that the ALJ erred in three ways: by failing to properly consider her complaints of pain and her symptoms' intensity, persistence and limiting effects; by not properly accounting for the pain and fatigue associated with her fibromyalgia while evaluating her residual functional capacity ("RFC"); and by failing to give controlling weight to her treating physician's opinion. (DN 15, PageID # 562.) All three arguments relate to step four of the Commissioner's five-step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4).

At step four, the ALJ must determine a claimant's RFC, or "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted); 20 C.F.R. §§ 404.1545(a), 404.1546. To do so, the ALJ must consider medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3). The claimant bears the burden of proof at this step. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A.  <u>The ALJ's Consideration of Wheeler's Pain and Symptoms</u>

In making his RFC determination, the ALJ must consider the claimant's statements about pain and other symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. In considering a claimant's symptoms, the ALJ must follow a two-step process. First, he must determine whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques which could reasonably be expected to produce the claimant's pain or other symptoms. *Id*. Second, if there is, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *Id.*

Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities. *Id.* When assessing the consistency of the claimant's statements with the record, the ALJ may consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures other than treatment the claimant uses of has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Here, the ALJ determined that Wheeler had underlying medically determinable physical impairments which could reasonably be expected to produce her alleged symptoms. (DN 13-2, PageID # 86.) However, after consideration of the evidence, the ALJ found that Wheeler's statements concerning the intensity, persistence and limiting effects of alleged symptoms were inconsistent with medical evidence and other evidence in the record. (*Id.*) Wheeler contests the determination made by the ALJ in the second step of analyzing Wheeler's symptoms. Specifically, Wheeler argues the ALJ failed to properly evaluate the intensity, persistence and limiting effects of her symptoms through the requisite factors. (DN 15-1, PageID # 572–73.)

1. *Daily Activities*

The first factor at issue is Wheeler's ability to conduct daily activities. (*Id.* at PageID # 573.) The ALJ concluded that Wheeler's daily activities "comported with sedentary activity with increased activity on good days." (DN 13-2, PageID # 88.) Wheeler argues the ALJ erred by

5

focusing on her ability to perform some daily activities as evidence that she is not disabled. (DN 15-1, PageID # 573.) She further argues that the ALJ solely focused on the fact that she is "able to read, listen to music, watch television, use the computer, and carry on conversation to support his finding" that Wheeler is not disabled. (*Id.*) The Commissioner argues that the ALJ considered Wheeler's ability to perform a wide range of daily activities, from maintaining her household to taking on-line college courses. (DN 20, PageID # 605.)

Wheeler's account of the ALJ's analysis is inaccurate. In terms of Wheeler's daily activities, the ALJ considered the range of activities found in the record that Wheeler was able to do. The ALJ considered that Wheeler is primarily responsible for maintaining her household, can perform a relatively wide range of activities of daily living despite her symptoms, is able to care for her young children, tend to her own personal care and hygiene, prepare simple meals, do household chores, drive, and take online college courses. (DN 13-2, PageID # 85–86.)

Wheeler cites *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007), to support her argument that her daily activities do not show an ability to conduct work activities. (DN 15-1, PageID # 573.) In *Rogers*, the Court found that the plaintiff's somewhat minimal daily functions were not comparable to typical work activities because she was unable to sit for longer than a few minutes; she had difficulty holding a book; the extent of her care for her dog was opening the door to let the dog out; buttoning her shirt was difficult for her; and she received assistance for many everyday personal care activities from her children who lived close by. *Id.* at 249. The ALJ in *Rogers* mischaracterized Rogers's scope of daily activities and failed to examine the physical effects of her impairments. *Id.* at 248. But that is not the case here. The ALJ fairly characterized the scope of Wheeler's daily activities and examined the physical effects of her impairments.

Wheeler further argues that the Disability Report Appeal Form SSA 3441 which she filled out verifies the severity of her self-reported symptoms. (DN 13-2, PageID # 573–74.) The ALJ considered the symptoms Wheeler reported on the Disability Report Appeal Form and found that the severity of her symptoms was not so debilitating as to preclude all gainful employment. (DN 12-2, PageID # 86.)

The ALJ's decision regarding the severity of symptoms Wheeler self-reported was supported by substantial evidence. Once again, there was a lack of objective evidence documenting the frequency and severity of her symptoms described in this report. Her reports of chronic fatigue, chronic pain, and migraines were not supported by objective medical evidence. The reported severe chronic fatigue and pain occurred before she initiated treatment. In terms of the severity of Wheeler's migraines, she was not under the care of a neurologist, had not required emergent treatment for headaches, and had not consulted a pain management specialist, or attempted other treatments. (*Id.* at PageID # 87.) Her physical examinations also did not show related neurological deficits. (*Id.*) Although there was a lack of medical evidence supporting the severity of Wheeler's symptoms, the ALJ acknowledged that Wheeler's fatigue and headaches might contribute to her work ability and took that into account in determining her RFC. (*Id.*)

Wheeler also points to a function report her ex-husband filled out as verification of her statements regarding her daily activities. (DN 15-1, PageID # 573–74.) Wheeler argues the ALJ erred in finding his report unpersuasive. Wheeler argues that her relationship with her ex-husband should not be the reason the ALJ rejects his report. (*Id.* at PageID # 574.) However, as the ALJ noted, her ex-husband is not medically trained, he is not a disinterested third party, and (like Wheeler's own statements) his report is inconsistent with the opinions and observations by medical

7

doctors in this case. (DN 13-2, PageID # 89.) Thus, it was proper for the ALJ to afford the ex-husband's function report little or no weight.

### 2. *Other Factors*

Wheeler continues her argument by repeating her alleged conditions with regards to the other factors the ALJ considers under in 20 C.F.R. Section 404.1529(c)(3). She restates information regarding her level of pain, that her pain is exacerbated by certain factors, the different medications she takes regarding her pain, the treatment she has received for pain relief, and other measures she takes to relieve pain. (DN 15-1, PageID # 574-77.) Wheeler has failed to state how the ALJ's findings in each of these factors is not supported by substantial evidence.

In short, the ALJ properly considered the severity of Wheeler's symptoms in its determination of Wheeler's RFC.

### B. The ALJ's Consideration of Wheeler's Fibromyalgia

Wheeler repeatedly argues the ALJ did not properly account for the pain and fatigue associated with her fibromyalgia. (DN 15-1, PageID # 573, 575–80, 582.) She asserts that the ALJ discounted her complaints regarding her symptoms due to a fundamental misunderstanding regarding the nature of fibromyalgia. (*Id.* at PageID # 580.) She argues that emphasis on objective medical evidence in fibromyalgia cases is inappropriate. (*Id.*) In response, the Commissioner stated that the ALJ properly determined Wheeler's RFC in light of evidence of her fibromyalgia and with regard to agency policy regarding fibromyalgia. (DN 20, PageID # 597.) In addition, the Commissioner noted there must be sufficient objective evidence to support a finding that the person's impairment limits performance of any substantial gainful activity and found the ALJ properly considered the objective evidence and Wheeler's symptoms in determining her "ultimately very restrictive RFC." (*Id.* at PageID # 598.)

Fibromyalgia is an unusual impairment in that its symptoms are often not supported by objective medical evidence. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) ("On at least one occasion, we have recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."). However, a diagnosis of fibromyalgia does not automatically entitle a claimant to disability benefits. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. Jan. 15, 2008). The ALJ must make a finding about the credibility of the person's statements regarding the effects of her symptoms on functioning. *See* SSR 12-2p, 2012 WL 3104869 at *5. For the ALJ to find someone disabled due to fibromyalgia, there must be objective evidence sufficient to support a finding that the person's impairments so limit her functional abilities that it precludes her from performing any substantial gainful activity. *Id.* at *2.

Here, the ALJ considered the objective evidence and Wheeler's alleged symptoms in determining her RFC. The ALJ found that Wheeler's statements and actions during treatment indicated mild symptoms under good control with medication. (DN 13-2, PageID # 86.) The ALJ also noted that Wheeler's treatment records reflected good overall mobility and use of extremities, as well as no problems with her gait, station, balance, or coordination. (*Id.*) Furthermore, the ALJ did not completely ignore Wheeler's physical impairments resulting from fibromyalgia. Rather, he concluded after an analysis of objective evidence and all other evidence in the record, that the symptoms alleged did not cause a disabling degree of severity as Wheeler stated. (*Id.* at PageID # 86-88.) The ALJ properly considered the objective evidence and other evidence regarding Wheeler's fibromyalgia while determining her RFC.

9

C. The ALJ's Consideration of the Treating Physician's Opinion

Wheeler next argues that the ALJ improperly gave treating physician Lawrence H. Peters's Medical Source Statement little weight due to a lack of understanding regarding the nature of fibromyalgia. (DN 15-1, PageID # 580.) Once again, Wheeler argues that fibromyalgia diminishes the importance of objective evidence and argues that Dr. Peters's Medical Source Statement is supported because her own testimony is consistent with it. (*Id.* at PageID # 576–82.)

A treating source opinion must receive "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with other substantial evidence in . . . [the] case record." 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376. Where a treating source opinion is not given controlling weight, it "is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." 20 C.F.R. § 404.1527(c)(2)–(6). Whatever weight the ALJ accords a treating source's opinion, he must set forth "good reasons" for doing so. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination.") (citing 20 C.F.R. § 404.1527(d)(2)).

Opinions from examining and non-examining medical sources are assessed under these same guidelines (*i.e.*, examining relationship, specialization, consistency, and supportability), but are never assigned controlling weight. *Id.* Finally, while opinions from treating, examining, and non-examining medical sources must be considered in determining RFC, the ALJ is ultimately responsible for the RFC finding. 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183, at *2.

Here, the ALJ declined to give Dr. Peters's opinion controlling weight because his opinion was not well supported by medically acceptable clinical laboratory diagnostic techniques and was inconsistent with other substantial evidence in the record. (DN 13-2, PageID # 88.) The ALJ appropriately assigned Dr. Peters's opinion little weight because the ALJ set forth good reasons for doing so. First, Dr. Peters provided "no discussion of the relevant clinical signs, symptoms, and laboratory findings underlying his conclusions." (*Id.*) Second, Dr. Peters's opinion was inconsistent with his own treatment records which indicated that Wheeler's pain was well controlled with medication. (*Id.* at PageID # 88–89.) Finally, Dr. Peters's opinion was inconsistent with Wheeler's own reports of an increased ability to perform daily activities. (*Id.* at PageID # 89.)

Wheeler is required to prove her disability with more than her own allegations. 20 C.F.R. § 404.1529(a). It appears that the only supports in the record for Dr. Peters's Medical Source Statement are Wheeler's own statements regarding her alleged symptoms. Wheeler's statements alone, unsupported by objective evidence or even other evidence in the record, about pain and other symptoms, do not suffice to establish disability. 20 C.F.R. § 404.1529(a). Furthermore, even if reasonable minds could disagree on whether Wheeler is disabled because substantial evidence would also support a contrary result, the Court must affirm the ALJ's decision because it is supported by substantial evidence. *See Gayheart*, 710 F.3d at 374.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the final decision of the Commissioner be AFFIRMED.

**Notice**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).

cc: Counsel of record